UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN SCOTT HEARINGTON #179060,
        Plaintiff,                              Case No. 2:13-cv-240
v.                                                  HON. R. ALLAN EDGAR

HARESH PANDYA, *et al.*,
        Defendants.
_____/

## OPINION & ORDER

      Plaintiff, Kevin Hearington, an inmate currently confined at G. Robert Cotton Correctional Facility, brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights while at Kinross Correctional Facility (KCF) and Marquette Brach Prison (MBP). Plaintiff names Michigan Department of Corrections (MDOC) employees Dr. Haresh Pandya and Wendy Ball, and MDOC medical contractors Corizon, LLC (Corizon), Dr. Timothy Stallman, Joshua Kocha, Susan Wilson, and Penny Rogers as Defendants. Defendants bring motions to dismiss and for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies and they were not deliberately indifferent to Plaintiff's medical needs.[1] (Docket ## 27, 31) For the reasons discussed below, this Court will dismiss Defendants Pandya, Ball, Stallman, Kocha, and Rogers for failure to exhaust. This Court will also dismiss Defendant Wilson for lack of personal involvement.

### I. Facts

      Plaintiff alleges that Defendants were all deliberately indifferent to his medical needs because they allegedly denied him proper medical care for injuries he suffered while at KCF. On February 26, 2010, an inmate struck Plaintiff in the side of his head with a ten pound weight.

---

[1] MDOC Defendants also ask this Court to dismiss all "official capacity" claims. Because Plaintiff states that he is not suing the Defendants in an official capacity, this Court will not address that issue. (Docket # 40, 1) Similarly, Corizon argues that Plaintiff is unable to show the existence of an unconstitutional custom, policy, or procedure to support his claim against Corizon. *See Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996) (extending the standard in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), to private corporations). Plaintiff admits that for purposes of § 1983 liability against private corporations he is unable to prove the existence of an unconstitutional custom, policy, or procedure by Corizon. (Docket # 39, 25). Accordingly, this Court will dismiss Corizon.

Plaintiff was knocked unconscious and suffered a decompressed skull fracture. This Court summarized the events alleged in the complaint in its screening opinion:

> Plaintiff underwent surgery to remove bone fragments from his skull and to repair a dural laceration. After he was released from the hospital, Plaintiff was transferred to MBP. On July 21, 2010, Plaintiff returned to the hospital for surgery to place a titanium mesh plate over the wound. On August 21, 2010, Plaintiff learned that the wound was slightly opened. The surgeon recommended that Plaintiff see a plastic surgeon to cover the wound with a skin graft.
>
> From February 26, 2010 to August 21, 2010, Plaintiff was medicated with the drug Norco for severe headaches. On August 21, 2010, Plaintiff states that Defendant Kocha removed him from the drug without an adequate replacement for the pain of his headaches. Plaintiff also complains that Kocha did not refer him to a plastic surgeon for his skin graft.
>
> On August 30, 2010, Plaintiff was transported to KCF. In September 2010, Plaintiff developed a severe infection in the wound. Defendant Wilson treated the wound with Silvadene to no avail. Defendant Wilson eventually referred Plaintiff to Dr. Stallman. Later that month, Dr. Stallman examined Plaintiff's wound and noted that Plaintiff needed a skin graft. While Dr. Stallman initially requested a skin graft, he withdrew the request on October 11, 2010. Defendant Pandya also visited Plaintiff at KCF in October 2010 but did not order a skin graft. Stallman, Rogers and Wilson assured Plaintiff that his skin would grow over the wound but it never did.
>
> In January and February 2011, Plaintiff experienced multiple painful infections in his wound. On February 25, 2011, Plaintiff states that the infection was so severe, Defendant Wilson had to drain it with a needle. In March 2011, Corizon, Inc., approved Plaintiff's appointment with a plastic surgeon for a skin graft. Plaintiff complains that the repeated infections and eight months without a skin graft caused him to require treatment using a muscle flap. In September 2011, Plaintiff was informed that he would need to have the muscle flap surgery. In November 2011, Plaintiff was transferred to the G. Robert Cotton Correctional Facility.
>
> In January 2013, Plaintiff received a consultation with a plastic surgeon and neurosurgeon. On March 8, 2012, Plaintiff underwent the muscle flap surgery, and, then, an unspecified second surgery at the University of Michigan Hospital. Those surgeries required the removal of the plate, bone and muscles, leaving Plaintiff severely scarred. In April 2012, the hospital released Plaintiff.

For the alleged lack of medical care, Plaintiff asks for declaratory relief and monetary damages.

## II. Failure to Exhaust

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468

(6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Defendants argue that Plaintiff failed to exhaust his administrative remedies for a variety of reasons. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216; 127 S. Ct. 910, 919-21 (2007). The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.,* provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As such, the exhaustion of all available administrative remedies required before a prisoner can file a federal claim. *Jones,* 549 U.S. at 204. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones,* 549 U.S. at 204. When a prisoner fails to comply with the procedural requirements but prison officials address the merits of the grievance at each step the prisoner has exhausted his administrative remedies. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010); *Cook v. Caruso*, 531 Fed. Appx. 554, 563 (6th Cir. 2013).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at

3

¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.*, the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Defendants argue that Plaintiff failed to exhaust his administrative remedies for a variety of reasons. To support their claim that Plaintiff failed to exhaust Defendants have included the MDOC Prisoner Step III Grievance Report, which lists Step III grievances filed by Plaintiff from May 2009 until April 29, 2014. (Docket #28-6, 5–6) They also include an affidavit from Richard D. Russell, manager of the Grievance Section, Office of Legal Affairs, Michigan Department of Corrections, regarding the Step III Grievance Report and the Grievance Tracking database used to generate this report. (*Id.* at 1–3)

The first grievance filed in this matter was KCF-11-01-0119-28e. (Docket # 28-6, 32) This grievance was filed at step I on January 24, 2011, and asserted that medical staff failed to provide Plaintiff with proper medical treatment. This grievance was rejected at each step as

4

untimely and never addressed the merits of Plaintiff's grievance. (*Id.* at 29–34) This grievance failed to exhaust his administrative remedies.

The second grievance filed was KCF-11-03-00255-12e1. (Docket #42-2, 2) This grievance complains of lack of treatment for problems that Plaintiff had with his hearing on February 24, 2011. Plaintiff alleges that an unknown male nurse (later named as Russell Defreitas) denied him care, yet the next day Defendant Wilson provided him with medical care based on the complaints he mentioned to Defreitas the previous day.

The merits-based response at Step I and II were directly related to Plaintiff's perceived lack of medical care on February 24, 2011, not for the request to have a skin graft procedure. Although Plaintiff argues that he never received a Step III response to his timely filed appeal, he provides no documentation to support that he sent a Step III response or that it was timely. In Plaintiff's affidavit he merely asserts that he "timely filed the step 3 appeal but never received a response." (Docket #41-1, ¶ 53) Because Step III appeals are sent to the Grievance and Appeals Section of the Office of Legal Affairs in the Operations Support Administration, documentation, including a post-office time time/date stamp and prisoner accounting, would support this claim. However, these are not included. Additionally, if Plaintiff filed a Step III appeal and no decision was rendered, he could have forwarded the Step III grievance to the Office of Legislative Corrections Ombudsman in Lansing, Michigan. (*See* MDOC Policy Directive 03.02.130 at ¶ T; Michigan Department of Corrections Prisoner/Parolee Grievance Appeal Form (effective July 9, 2007). Plaintiff did not forward his Step III grievance to the Ombudsman.

Defendants included a Step III Grievance Report and affidavit from the Grievance Manager, which provides documentation for any Step III grievances filed. Grievance KCF-11-03-00255-12e1 is not included. Plaintiff failed to take any of the steps necessary to challenge or appeal the alleged non-response or attach any support for his claim that he filed a Step III appeal. Moreover, even if Plaintiff properly exhausted this grievance the complaints alleged are for a perceived lack of medical treatment by Defreitas, not a named defendant. Therefore, did not exhaust his administrative remedies.

The third grievance filed was KCF-11-09-1017-12d3. (Docket # 28-6, 27) This grievance is problematic for a variety of reasons. The grievance was filed at step I on September 15, 2011, and complains that Dr. Borgeding and Defendant Wilson delayed in having a skin graph and plate removal procedure completed because of concerns about negligence and medical

5

liability. Plaintiff received a merits-based response at all three steps; therefore, Plaintiff properly exhausted his grievance against Defendant Wilson.

The fourth grievance filed was KCF-11-10-01088-28A. (Docket #42-4) This grievance was filed on October 6, 2011, and was rejected at Steps I and II as duplicative for raising the same issues raised in grievance KCF-10-09-01017-12d3. Plaintiff argues that he filed a Step III appeal of the Step II response. This Court notes that the reasoning this Court applied to grievance KCF-11-03-00255-12e1 applies to this grievance as well. Moreover, even if Plaintiff received a merits-based response at Step III, Plaintiff did not receive a merits based grievance at each step; therefore, Plaintiff failed to exhaust his administrative remedies with respect to this grievance. *Reed-*Bey, 603 F.3d at 326; *Cook*, 531 Fed. Appx. at 563.

The fifth grievance filed was JCF-12-05-1056-28i. (*Id.* at 22) This grievance is irrelevant to Plaintiff's medical treatment and does not exhaust any of Plaintiff's claims. Plaintiff agrees. (Docket #40, 23)

The sixth grievance filed was JCF-12-05-1055-28g. (*Id.* at 16) This grievance was filed on May 6, 2012, and names all Defendants in this case and complains that the delay in having the skin graft procedure done resulted in significant additional pain and disfigurement of his skull, neck, and back. At Step I and II the grievance was rejected on jurisdictional grounds and did not address the merits of Plaintiff's grievance. These responses state that the Plaintiff filed this grievance with JCF but it should have been filed with KCF. The Step III response is equivocal. It did not reject the grievance on procedural grounds but vaguely addressed some of the merits of Plaintiff's grievance. It states that the grievant had been assessed and provided with medical treatment and that grievant should consult with medical providers for further treatment. It also states that "[a] disagreement with the judgment of those qualified and capable of making same does not support the allegations contained within this grievance." (*Id.* at 13)

This Step III grievance response suggests a merits-based response even though it does not clearly reject the grievance on procedural grounds. This grievance based response is unlike the exhausted grievance in *Reed-Bey* and more like the unexhausted grievance in *Cook*. In *Reed-Bey*, the grievant exhausted because he received a merits-based response at each step even though the grievance could have been rejected on procedural grounds. *Reed-Bey,* 603 F.3d at 325. *Cook* takes this one step further by stating that for *Reed-Bey*'s holding to apply the grievant "would have had to receive 'merits-based responses *at each step.*'" 531 Fed. Appx. at 563

6

(quoting *Reed-Bey,* 603 F.3d at 325) (emphasis added in *Cook*). Plaintiff here did not receive a merits-based response at Step I or II. Plaintiff's Step III response is less clear. This response did not clearly reject the grievance on procedural grounds but also failed to deny the grievance on the merits. This Court must give Plaintiff the benefit of the doubt and assume a merits-based response. Although it is not clear whether Plaintiff received a merits-based response at step III, his Step I and II grievances were rejected on procedural grounds. Accordingly, under *Reed-Bey* and *Cook*, Plaintiff failed to exhaust his administrative remedies.

The seventh grievance filed by Plaintiff was JCF-13-01-0166-12f. (Docket # 28-6, 10) This grievance was filed on January 15, 2013, and complains of not receiving proper treatment for his headaches. This grievance names PA Sperling, Corizon, and "all other Corizon employees." Plaintiff names other groups and individuals but they are not named as defendants in this suit. Although this grievance was exhausted with respect to the medical issues involved, Corizon has already been dismissed. The fact that the grievance denials did not reject the grievance outright for failing to name specific Corizon employees, which Plaintiff was well aware of the requirement to specifically name individuals based on his previous grievances and the grievance policy directive, was likely the result of the grievance naming an actual person, PA Sperling. Even if Plaintiff properly exhausted this grievance against Corizon employees, the complaint does not allege any impropriety on the part of Corizon or Corizon employees for conduct occurring after early spring of 2012.

Plaintiff failed to exhaust his administrative remedies against Defendants Pandya, Ball, Stallman, Kocha, and Rogers. Those Defendants will be dismissed. Plaintiff did exhaust his administrative remedies with respect to Defendant Wilson.

### III. Lack of Personal Involvement

Defendant Wilson was properly exhausted but she was not personally involved in the medical decision-making process. Even if Plaintiff exhausted his remedies against Defendants Ball, Kocha, Wilson, and Rogers, they too were not personally involved in the medical decision-making process. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874

7

(6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Wilson, Ball, Kocha, and Rogers were personally involved in the medical decision-making process. Medical decisions are "the sole province of the responsible physician, psychiatrist, or dentist." MDOC Policy Directive 03.04.100 Health Services, ¶ K. Defendants Wilson, Ball, Kocha, and Rogers cannot be liable for failing to act becayse they are unable to make medical decisions. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claim against Defendant Wilson is dismissed for lack of personal involvement. Defendants Ball, Kocha, and Rogers would also be dismissed for lack of personal involvement.

## CONCLUSION

For the reasons stated above, this Court **GRANTS** Defendants' Motions for summary judgment (Docket ## 27, 31). This Court dismisses Defendants Pandya, Ball, Stallman, Kocha, and Rogers for failure to exhaust, Defendant Wilson for lack of personal involvement, and Defendant Corizon for an inability to show the existence of an unconstitutional custom, policy, or procedure to support his claim.

Plaintiff's motion to amend or correct (Docket #47) and Defendant Corizon's motion to strike (Docket #51) are **DENIED** as moot.

Plaintiff's case will be dismissed and a judgment consistent with this order will be entered.

**SO ORDERED**.


Dated:        2/5//2015                              */s/ R. Allan Edgar*
                                                     R. Allan Edgar
                                                     United States District Court Judge